**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HOLLY KASZUBA,** | : | |
| Petitioner | : | CRIMINAL NO. 3:17-CR-27 |
| v. | : | (JUDGE MANNION) |
| **UNITED STATES OF AMERICA,** | : | |
| Respondent | : | |

**MEMORANDUM**

Pending before the court is petitioner Holly Kaszuba's ("Kaszuba") *pro se* Motion to Vacate, Set Aside, or Correct her 240-month sentence of imprisonment imposed on July 19, 2019. (Doc. 263). Kaszuba is currently serving her prison sentence at FCI Danbury in Connecticut and her BOP projected release date is September 9, 2036. Kaszuba's motion is filed pursuant to 28 U.S.C. §2255 and is based upon claims of violation of her right to confront a witness at trial and insufficiency of the evidence as well as an ineffective assistance of counsel claim against her trial counsel. Kaszuba claims that her counsel was ineffective for allowing her to be classified at sentencing as having a leadership role.

On August 22, 2017, a five-count Superseding Indictment was returned against Josthan Cardona, Matthew McCollum, and Kaszuba. In

1

Count 4, it was alleged that on or about December 12, 2015, Kaszuba, aided and abetted by others and aiding and abetting others, distributed and possessed with intent to distribute heroin and fentanyl, and that the death of Christopher Graff resulted from the use of the controlled substance distributed by Kaszuba, in violation of 21 U.S.C. §§841(a)(1) and (b)(1)(C) and 18 U.S.C. §2. (Doc. 28).

Kaszuba's two co-defendants pled guilty but Kaszuba went to trial. On November 7, 2018, the jury found Kaszuba guilty on Court 4. (Doc. 164).

A sentencing hearing before the Honorable A. Richard Caputo was held on July 19, 2019.[1] The statutory mandatory minimum sentence Kaszuba faced was 240 months on Count 4. (Doc. 222, PSR, ¶58). Kaszuba's criminal history category was VI and her advisory guideline range was 360 months' imprisonment to life. (PSR ¶59). Kaszuba was sentenced to a total of 240 months' imprisonment followed by a four-year term of supervised release. (Doc. 232).

Kaszuba appealed her conviction and sentence to the Third Circuit Court of Appeals. On August 14, 2020, the Third Circuit affirmed Kaszuba's conviction and issued its mandate on September 8, 2020. (Doc. 250).

---

[1]This case was originally assigned to Judge Caputo. Upon his death, this case was reassigned to the undersigned.

On March 3, 2021, Kaszuba filed her 28 U.S.C. §2255 motion to vacate, set aside or correct her 240-months' imprisonment sentence. (Doc. 263). On April 12, 2021, the government filed its brief in opposition to Kaszuba's motion. (Doc. 267). Kaszuba filed her letter reply briefs on June 21, 2021, (Doc. 268), and August 26, 2021, (Doc. 269).

Upon the court's review of the record in this case, Kaszuba's §2255 motion, (Doc. 263), as well as the briefs of the parties, Kaszuba's motion will be **DENIED** without the need for an evidentiary hearing.

I. **BACKGROUND**[2]

After Kaszuba was found guilty of distribution and possession with intent to distribute heroin and fentanyl resulting in death in violation of 21 U.S.C. §§841(a)(1) and (b)(1)(C), and 18 U.S.C. §2, on November 7, 2018, the court directed that a pre-sentence report ("PSR") be prepared. The final PSR was filed on July 11, 2019. (Doc. 220). The PSR indicated that

---

[2]The background of this case was stated in the Third Circuit's August 14, 2020 Opinion. (Doc. 250-2). The complete factual background of this case is also detailed in the PSR filed on July 11, 2019, (Doc. 220), as well as the government's opposition brief, (Doc. 267 at 7-20). The government also submitted a CD disk which contains a copy of its Third Circuit supplemental appendix which is referenced in its brief in opposition to Kaszuba's instant motion. (*See* id.). Since Kaszuba does not object to the background as stated in the referenced documents, it shall not be fully repeated herein.

3

Kaszuba's minimum term of imprisonment was 20 years and her maximum term of imprisonment was life pursuant to of 21 U.S.C. §841(b)(1)(C). The PSR found that based upon a total offense level of 40 and a criminal history category of VI, the advisory guideline imprisonment range for Kaszuba was 360 months to life, and that there did not appear to be any aggravating or mitigating factor that would warrant a departure from the guidelines.

On July 26, 2019, Kaszuba filed a direct appeal of her sentence with the Third Circuit Court of Appeals. (Doc. 237). On August 14, 2020, the Third Circuit affirmed Kaszuba's judgment of sentence. (Doc. 250-2).

On March 3, 2021, Kaszuba timely filed her instant motion to vacate, set aside, or correct her July 18, 2019 sentence pursuant to 28 U.S.C. §2255, seeking the court to vacate her 240-months sentence. (Doc. 263). On April 12, 2021, the government filed a brief in opposition. (Doc. 267).

On June 21, 2021, Kaszuba filed a letter reply brief in which she admits "I broke the law", but requests the appointment of counsel to assist her with her §2255 motion and to look at her case again since she believes that her trial counsel "didn't help [her]." (Doc. 268). On August 26, 2021, Kaszuba filed a second letter reply brief. (Doc. 269).

## II.   STANDARD

When a district court judge imposes a sentence on a defendant who believes "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, [the defendant] may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. §2255, ¶1; *see* United States v. Eakman, 378 F.3d 294, 297-98 (3d Cir. 2004).

"Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States Attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. §2255(b).

A §2255 motion "is addressed to the sound discretion of the district court." United States v. Williams, 615 F.2d 585, 591 (3d Cir. 1980). "[A] motion under 28 U.S.C. §2255 is the proper procedure for a federal prisoner to raise a collateral attack on his or her federal sentence for any error that occurred at or prior to sentencing." Paulino v. U.S., 2010 WL 2545547, *2 (W.D. Pa. June 21, 2010) (citations omitted). "In order to prevail on a §2255 motion to vacate, set aside, or correct a sentence, a Petitioner must show

'(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'" U.S. v. Bates, 2008 WL 80048, *2 (M.D. Pa. Jan. 7, 2008) (quoting Mallet v. U.S., 334 F.3d 491, 496-97 (6th Cir. 2003)). "The petitioner bears the burden of proof under §2255 and must demonstrate his right to relief by a preponderance of the evidence." U.S. v. Ayers, 938 F.Supp.2d 108, 112 (D. D.C. 2013) (citation omitted). Kaszuba's instant claims fall within the purview of §2255 since they challenge the validity of her sentence. Bates, 2008 WL 80048, *3 ("Claims of ineffective assistance of counsel may be brought in the first instance by way of a §2255 motion regardless of whether the movant could have asserted the claim on direct appeal.") (citing Massaro v. U.S., 538 U.S. 500, 504, 123 S.Ct. 1690 (2003)).

Additionally, "Section 2255 does not afford a remedy for all errors that may have been made at trial or during sentencing", "[r]ather, Section 2255 is implicated only when the alleged error raises 'a fundamental defect which inherently results in a complete miscarriage of justice.'" Williams v. United States, 2016 WL 6892375, *2 (M.D. Pa. Nov. 22, 2016) (internal citations omitted).

The Sixth Amendment to the United States Constitution guarantees a criminal defendant "the assistance of counsel for his defense." U.S. Const.

amend. VI. The U.S. Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984) established a two-prong test to evaluate the effectiveness of the assistance of counsel. In the first prong, the defendant must show "that counsel's performance was deficient," id., 687, and must prove this by "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. In addition, the defendant must show that "counsel's representation fell below an objective standard of reasonableness." Id., 687-88.

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action "might be considered sound trial strategy.

Id., 689.

In the second prong, a defendant must show that counsel's deficient performance "prejudiced the defense," because "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., 687. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test, *cf*. United States v.

7

Valenzuela–Bernal, 458 U.S. 858, 866–867 (1982), and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Id., 693. Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., 694. Thus, to state a successful claim for ineffective assistance of counsel, petitioner must show "both that counsel's performance was deficient, and that the deficiency prejudiced the defense." Wiggins v. Smith, 539 U.S. 510, 521, 123 S.Ct. 2527 (2003). "A failure to make the required showing on either prong defeats a defendant's ineffective assistance of counsel claim." Ayers, 938 F.Supp.2d at 113 (citing Strickland, 466 U.S. at 700).

### III.  DISCUSSION

This court has jurisdiction over Kaszuba's motion under §2255 pursuant to pursuant to 28 U.S.C. §§1331 and 2241.

In her §2255 motion, Kaszuba raises four claims. First, she challenges the trial testimony of Dr. Michael Coyer and alleges that she was deprived of her constitutional right to confront the toxicologist who actually prepared the toxicology report since it was not Dr. Coyer. Kaszuba's second and fourth

claims are substantially similar, alleging that at trial, the government failed to prove that the drugs she delivered to the victim resulted in his death and, that the government produced "no evidence" that the drugs she delivered to the victim were the cause of his death. Third, Kaszuba claims that her counsel was ineffective for "allowing" her to be classified at sentencing as having a leadership role since she was not a drug dealer.

Kaszuba's first claim is that her right under the Confrontation Clause was violated since the government introduced at trial the toxicology report through Dr. Coyer, the lab director, rather than through the lab technician who actually performed the testing. Kaszuba raised this exact issue in her direct appeal to the Third Circuit. In its August 14, 2020 Opinion, (Doc. 250-2 at 3-4), the Third Circuit found no merit to this claim and stated:

> A laboratory report containing a testimonial certification may not be introduced through the testimony of a person who neither signed the report nor performed or observed the relevant test. Kaszuba's confrontation right was preserved because Dr. Coyer compiled and signed the report. Because he reviewed every test the technicians conducted and every procedure they used, he did not simply "parrot[] what the non-testifying technician allegedly found during the testing." He was well-equipped to convey what the technicians knew or observed about a particular test and process, and he could expose any lapses that could have occurred during testing. There was, therefore, no violation of Kaszuba's confrontation right.

(footnotes omitted).

Therefore, it is clear that Kaszuba's constitutional claim has been litigated fully both at the district court level and in the court of appeals. (Id.).

9

It is well-settled in Third Circuit that "[o]nce a legal argument has been litigated and decided adversely to a criminal defendant at his trial and on direct appeal, it is within the discretion of the district court to decline to reconsider those arguments if raised again in collateral proceedings under 28 U.S.C. §2255." United States v. Orejuela, 639 F.3d 1055, 1057 (3d Cir. 1981). See also U.S. v. Schwartz, 925 F.Supp.2d 663, 691-92 (E.D. Pa. 2013) (citing Kaufman v. United States, 394 U.S. 217, 227 n. 8, 89 S.Ct. 1068 (1969); Gov't of the Virgin Islands v. Nicholas, 759 F.2d 1073, 1074–75 (3d Cir. 1985) (also recognizing a role for "the trial judge's personal knowledge" of the proceedings in resolving Section 2255 motions); United States v. Pelullo, 305 Fed.Appx. 823, 827 (3d Cir. 2008) (holding that ordinarily a "§2255 petition [can]not 'be used to relitigate matters decided adversely on appeal.'" (quoting Nicholas, 759 F.2d at 1075)); Withrow v. Williams, 507 U.S. 680, 721, 113 S.Ct. 1745 (1993) (citing Orejuela and other Courts of Appeal opinions in support of the proposition that "federal courts have uniformly held that, absent countervailing considerations, district courts may refuse to reach the merits of a constitutional claim previously raised and rejected on direct appeal").

"As a general rule, re-litigation of a claim considered on direct appeal is barred unless: (1) there is newly discovered evidence that could not reasonably have been presented at the original trial; (2) there is a change in

applicable law; (3) counsel provided ineffective assistance; or (4) other circumstances indicate that the accused did not receive full and fair consideration of his federal constitutional and statutory claims." Huggins v. United States, 69 F.Supp.3d 430, 456-57 (D. De. 2014) (citing United States v. Palumbo, 608 F.2d 529, 533 (3d Cir. 1979); United States v. DeRewal, 10 F.3d 100, 105 n. 4 (3d Cir. 1993); Davis v. United States, 417 U.S. 333, 342, 94 S.Ct. 2298 (1974)).

Kaszuba's instant claim challenging Dr. Coyer's testimony and alleging her constitutional right was violated was fully considered by the Third Circuit in her direct appeal. The court finds that none of the Palumbo factors apply to warrant post-conviction review of Kaszuba's present claim. The Third Circuit's decision affirming Kaszuba's conviction and judgment of sentence did not constitute an intervening change in the law and the Court did not announce a new rule of substantive law.

Therefore, the court will decline to re-hear the constitutional claim that Kaszuba again raises in her instant motion. *See* Schwartz, *supra*; Huggins.

The court will now consider Kaszuba's second and fourth claims together. Kaszuba contends that the evidence at trial was insufficient to convict her since there was, "no evidence that death occured [sic] from my sale to deceased and no proof [he] died from those specific drugs." (Doc. 263 at 5). She also contends that there was "no evidence the victum [sic] did

not have heroin/fentanyl in his system prior [to his taking the drugs Kaszuba sold to him]."

The government states that these claims generally challenging the sufficiency of the evidence presented at trial are not properly brought in a §2255 motion since "Kaszuba does not argue that, (1) her sentence was imposed in violation of the Constitution or laws of the United States; or (2) that the court was without jurisdiction to impose the sentence; or (3) that the sentence was in excess of the maximum authorized by law or (4) that the sentence is otherwise subject to collateral attack." (Doc. 267 at 27). (citing United States v. Hill, 368 U.S. 424, 426-27 (1962)).

As mentioned, Kaszuba's advisory guideline range was 360 months' imprisonment to life, and she faced a mandatory minimum sentence of 20 years. Kaszuba's sentence of 240 months' imprisonment was thus not imposed in violation of the Constitution or federal laws.

Moreover, similar to her first claim, the court will not review Kaszuba's second and fourth claims since they were previously litigated in her direct appeal and the Third Circuit found no merit to them. Specifically, in its Opinion, (Doc. 250 at 4-5), the Third Circuit stated:

> Kaszuba additionally contends that the District Court erred when it denied her motion for a judgment of acquittal under Federal Rule of Criminal Procedure 29. She claims that, because the District Court did not account for all of the heroin McCollum distributed, the Government failed to prove beyond a reasonable doubt that she distributed the drugs. In any review of the sufficiency of the evidence supporting a

criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." In the present case, the Government provided enough evidence for a rational juror to find Kaszuba guilty of aiding and abetting the distribution of a controlled substance resulting in death. The evidence showed that: Graff [victim] approached Kaszuba to obtain heroin; Kaszuba, in turn, approached McCollum to obtain the heroin; Graff neither knew McCollum nor spoke to him during the entire transaction; the money used to purchase the heroin was Graff's; and Kaszuba handed the money from Graff to McCollum, then handed the drugs from McCollum to Graff. The Court did not err in denying Kaszuba's motion.

(footnote omitted).

As such, the court will deny Kaszuba's motion as to her second and fourth claims since the Third Circuit found no merit to them and since the court declines to relitigate Kaszuba's insufficiency of evidence claims raised in her §2255 motion.

Finally, in her third claim, Kaszuba contends that her trial counsel was ineffective for allowing her to be classified as a leadership role. (Doc. 263 at 6). The court analyzes Kaszuba's claim of ineffective assistance of counsel using the two-pronged approach prescribed in *Strickland*.

The government responds to Kaszuba's claim of ineffective assistance of counsel, (Doc. 267 at 30), by simply stating as follows:

> In raising this issue regarding a "leadership role," Kaszuba again has only made a wholly unsupported allegation. In fact, no leadership role was assigned to Kaszuba, either in the pre-sentence report or in an allegation at trial. Since her counsel cannot be deemed ineffective for allowing something to occur

13

that did not occur, Kaszuba's claim in this regard should be denied.

As such, Kaszuba's counsel was not ineffective for failing to object to her alleged classification as a leadership role since she was not so classified either at trial or in the PSR. See U.S. v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999) (Third Circuit held that "[t]here can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument.") (citations omitted); U.S. v. Bui, 795 F.3d 363,366-67 (3d Cir. 2015).

Additionally, Kaszuba alleges in her August 26, 2021, 1-page letter to the court, considered as part of her reply brief, (Doc. 269), that although "I know I did something wrong to the law", "I didn't mean to hurt anyone[,] I'm an addict" and, that "I shared in the drugs." She also alleges that "I wanted to take the stand" at trial but her counsel said "it would be worse."

The court finds that despite the alleged unsubstantiated claim by Kaszuba regarding her request to testify at her trial, she completely fails to show that her sentence would have been any different even if she testified in light of the overwhelming evidence presented by the government against her at trial. (*See* Doc. 267 at 7-20). The Supreme Court cautions the court should not credit the "presentation of conclusory allegations unsupported by specifics . . . [or] . . . contentions that in the face of the record are wholly incredible." Blackledge v. Allison, 431 U.S. 63, 74 (1977). In order to

14

determine whether a defendant did, in fact, suffer actual prejudice: "[i]t is firmly established that a court must consider the strength of the evidence in deciding whether the *Strickland* prejudice prong has been satisfied." Buehl v. Vaughn, 166 F.3d 163, 172 (1999). The court must consider the "totality of the evidence" so as to "determine whether there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different." Id. (citations omitted).

Moreover, assuming *arguendo* that Kaszuba's counsel advised her not to testify at trial, her alleged testimony stated above clearly would not have altered the outcome of her trial.

## IV.  EVIDENTIARY HEARING

Although Kaszuba does not specifically request an evidentiary hearing, the court will address the issue since it is raised by the government. (Doc. 267 at 30-31). "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States Attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. §2255(b). *See* United States v. Day, 969 F.2d 39, 41-42 (3d Cir. 1992) (The court is required to conduct an evidentiary hearing to ascertain the facts "unless the motion and files and records of the case show conclusively that the movant is not entitled

to relief.") (citation omitted). However, the court need not accept the petitioner's allegations as true if they "are unsupported by specifics [or] wholly incredible in the face of the record." Patton v. United States, 2010 WL 3191887, *1 (W.D. Pa. 2010) (citing United States v. Estrada, 849 F.2d 1304, 1307 (10th Cir. 1988)). A review of the motion, the traverse and the government's brief, as well as the law and the claims make it clear that Kaszuba's allegations are wholly without merit. The court finds that Kaszuba is not entitled to an evidentiary hearing because the record conclusively establishes that she is not entitled to the relief sought in her §2255 motion. Therefore, the court, in its discretion, finds no reason to hold an evidentiary hearing.

## V. CERTIFICATE OF APPEALABILITY

A petitioner may not file an appeal from a final order unless a district or circuit judge issues a certificate of appealability ("COA") pursuant to 28 U.S.C. §2253(c). A COA shall not issue unless "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. §2253(c)(2). The petitioner must show that "jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." Miller-El v. Cockrell, 537 U.S. 322, 327

(2003); *see also* Slack v. McDaniel, 529 U.S. 473, 484 (2000). Here, a COA will not issue because Kaszuba has shown neither the denial of a constitutional right nor that jurists of reason would disagree with this court's resolution of her claims.

## VI.   CONCLUSION

Based on the foregoing, the court will **DENY** Kaszuba's §2255 motion in its entirety, (Doc. 263), without an evidentiary hearing. Further, no COA will issue. The court will also **DENY** Kaszuba's request for the appointment of counsel to assist her with her §2255 motion. (Doc. 268 at 2). An appropriate order shall follow.

                                             s/ *Malachy E. Mannion*
                                        **MALACHY E. MANNION**
                                        **United States District Judge**

**DATE: October 12, 2021**
17-27-01